FILED
2026 Nov-16 PM 03:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| ALAN SIGMON,<br><br>Plaintiff,<br><br>v.<br><br>THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ALABAMA,<br><br>Defendant. | ) | Case No. 2:25-cv-01806-NAD |

**MEMORANDUM OPINION AND ORDER GRANTING**
**DEFENDANT'S MOTION TO DISMISS**

For the reasons stated below, the court **GRANTS** the motion to dismiss filed by Defendant The Board of Trustees of the University of Alabama (UAB, Doc. 34), and **DISMISSES WITH PREJUDICE** Plaintiff Alan Sigmon's amended complaint.[1] *See* Doc. 1 (initial complaint); Doc. 33 (amended complaint). The court separately will enter final judgment.

## BACKGROUND

### A. Procedural background

On October 17, 2025, Plaintiff Sigmon initiated this action by filing a *pro se*

[1] The parties have fully briefed this motion, and the court has determined that the motion is appropriate for disposition on the briefs without oral argument. *See* Fed. R. Civ. P. 78(b); Doc. 36 (Plaintiff Sigmon's opposition); Doc. 37 (Defendant UAB's reply); *see also* Doc. 35 (briefing schedule).

complaint against Defendant UAB alleging six claims for relief related to his exclusion from a medical clinical trial study addressing Gulf War Illness (GWI). Doc. 1. On December 2, 2025, UAB filed a motion to dismiss, asserting that the initial complaint failed to state a claim upon which relief can be granted. Doc. 10. The parties fully briefed that motion. *See* Doc. 17 (opposition); Doc. 23 (reply); Doc. 13 (briefing schedule).

On April 2, 2026, the court granted UAB's motion to dismiss the initial complaint (Doc. 10), with leave to amend. Doc. 32. The court ruled that the initial complaint did not include sufficient fact allegations to state a plausible claim for relief. Doc. 32.

On April 22, 2026, Sigmon filed an amended complaint against UAB alleging two claims for relief: (1) discrimination under Title II of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act (Rehab Act); and (2) "failure to provide reasonable modification." Doc. 33 at 11–14.

On May 14, 2026, UAB filed this motion to dismiss the amended complaint, asserting that the amended complaint fails to state a claim for discrimination or for failure to provide an accommodation, and that Sigmon lacks standing. Doc. 34. On June 3, 2026, Sigmon filed his opposition. Doc. 36. On June 16, 2026, UAB filed its reply. Doc. 37. The parties have consented to magistrate judge jurisdiction. Doc. 18; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

### B. Allegations in the amended complaint

The amended complaint alleges the following: Sigmon is a Gulf War veteran, who has been diagnosed with GWI and Post-Traumatic Stress Disorder (PTSD). Doc. 33 at 1. Sigmon attempted to participate in a federally funded clinical trial that UAB conducted on GWI, but he was excluded because of his PTSD. Doc. 33 at 2. The amended complaint alleges that UAB required study participants to meet the Kansas and CDC Case Definitions of GWI, and that UAB excluded him from the study "based on a PTSD-related screening score without individualized clinical review to determine whether [Sigmon] has any actual exclusionary condition under the Kansas framework." Doc. 33 at 2–3.

The amended complaint also alleges that Sigmon's PTSD symptoms "overlapped with symptom domains recognized under the Kansas Case Definition for GWI." Doc. 33 at 5.

On January 12, 2024, Sigmon was "informed . . . by email and voicemail that he was eligible for the study." Doc. 33 at 3. Sigmon then executed informed consent paperwork, received "pre-enrollment bloodwork," was assigned a study ID number, and was instructed to begin the baseline phase of the study and to "assume that he was eligible unless told otherwise." Doc. 33 at 3–5 (cleaned up).

On February 6, 2024, UAB informed Sigmon that he was not eligible to participate in the study "based on a high score on the Posttraumatic Stress Disorder

Checklist-Military Version (PCL-M)." Doc. 33 at 5. The amended complaint alleges that UAB excluded Sigmon "based on a PTSD PCL-M score not disclosed in the study materials, screenings, communications, informed consent documents, laboratory instructions, or the Kansas-based criteria [UAB] represented it was using." Doc. 33 at 5.

The amended complaint alleges that, after Sigmon's exclusion, he reached out to clinical research coordinators for the study "seeking clarification and explaining that some of his reported symptoms were related to Gulf War service and overlapped with symptom domains recognized under the Kansas Case Definition for GWI," but Sigmon was "provided no individualized clinical assessment, investigator review, or case-specific eligibility evaluation after the PTSD-related screening result." Doc. 33 at 5–6, 9–10. The amended complaint alleges that Sigmon was "excluded during the baseline phase based on a PTSD-related screening result, without any documented review by the PI or study physician and without any opportunity for case-specific clinical evaluation." Doc. 33 at 10.

The amended complaint also alleges that, after Sigmon's exclusion from the UAB GWI trial, he was approved for participation in other GWI trials based on findings that he met the Kansas Case Definition for GWI. Doc. 33 at 2, 7–11. The amended complaint "therefore alleges that [UAB] excluded [Sigmon] based on a PTSD-screening measure without determining whether his reported symptoms were

manifestations of GWI within the Kansas and CDC criteria [UAB] represented it was applying." Doc. 33 at 2, 6.

The amended complaint alleges further that, after Sigmon's exclusion, he submitted a complaint to the United States Department of Health and Human Services Office for Civil Rights (OCR), which ultimately "closed the matter without formal enforcement action but advised [UAB] to assess whether there may have been an 'incident of noncompliance' and to ensure compliance with applicable nondiscrimination requirements." Doc. 33 at 11 (emphasis omitted).

Sigmon attached to the amended complaint several documents, including the trial protocol, which contains eligibility criteria. Doc. 33-4. The inclusion criteria for the study state that participants must meet both "the Kansas GWI Case Definition" and the "CDC GWI Case Definition" for Gulf War Illness. Doc. 33-4 at 7. Sigmon also attached an email from February 1, 2024, in which Sigmon was notified that his pre-enrollment lab work had been analyzed and approved, and that he was moving on to the baseline phase of the study. Doc. 33-10 at 2. The email stated as follows: during the baseline phase, Sigmon would answer surveys; "[a]s explained during consent, the Baseline Survey contains potentially exclusionary questions"; and Sigmon could be notified of exclusion from the study due to answers on the baseline survey. Doc. 33-10 at 2. Sigmon also attached an email from Olivia Haskin (a clinical research coordinator) dated February 6, 2024, stating that Sigmon

was not eligible for the study based on his baseline survey because of his high PTSD PCL-M score. Doc. 33-11 at 2.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Under Federal Rule of Civil Procedure 12(b)(6), the court can dismiss a complaint for "failure to state a claim upon which relief can be granted." *Id.* According to the U.S. Supreme Court, "[d]etailed factual allegations are not required, but [Rule 8] does call for sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (cleaned up) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim for relief; and, "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 663–64, 678 (citations omitted); *see Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." (cleaned up)).

A district court does "hold the allegations of a *pro se* complaint to less stringent standards than formal pleadings drafted by lawyers," and liberally construes *pro se* allegations. *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014). But "[e]ven in the case of *pro se* litigants this leniency does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Id.* at 1168–69 (quotation marks omitted).

**DISCUSSION**

Even accepting as true all of the fact allegations in the amended complaint (liberally construed), and construing all reasonable inferences in Sigmon's favor (as the court must on this motion to dismiss), the amended complaint does not state a plausible claim for relief against UAB under the ADA or the Rehab Act. *See Campbell*, 760 F.3d at 1168–69; Fed. R. Civ. P. 12(b)(6); *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555, 570.

The amended complaint alleges that UAB discriminated against Sigmon in violation of the ADA and the Rehab Act by excluding him from its federally funded GWI trial study because of his PTSD, and by failing to provide a reasonable modification. Doc. 33 at 11–13. Under both Title II of the ADA and the Rehab Act, "a plaintiff raising a disability discrimination claim must show that (1) he is a

'qualified individual with a disability'; (2) who was 'excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity'; and (3) such 'exclusion, denial of benefit, or discrimination was by reason of [the] disability.'" *Lewis v. Sheriff, Fulton Cty. Ga.*, 166 F.4th 107, 114 (11th Cir. 2026) (quoting *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019)).

By statute, a qualified individual with a disability is someone who has a disability and "meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity," with or without reasonable modifications. 42 U.S.C. § 12131(2).

The determinative question on this motion is whether the amended complaint includes sufficient fact allegations to plausibly allege that Sigmon was a qualified individual who met the essential eligibility requirements for UAB's study. *See Lewis*, 166 F.4th at 114; 42 U.S.C. § 12131(2). The amended complaint does include a conclusory allegation that Sigmon "met the essential eligibility requirements" for the study and "did not meet any exclusionary criteria," but that is not enough to state a plausible claim. Doc. 33 at 12. *But see, e.g.*, *Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

With respect to fact allegations, the amended complaint alleges that UAB

"determined that Plaintiff was eligible and advanced him though enrollment, consent, laboratory testing, approval, Study ID assignment, and baseline procedures," but that Sigmon was "later excluded . . . based on a PTSD-related screening score without individualized clinical review to determine whether Plaintiff had any actual exclusionary condition under the Kansas framework." Doc. 33 at 2. The amended complaint alleges that Sigmon was excluded "based on a PTSD-screening score that had not been identified as an exclusion criterion at any prior stage and was not part of the Kansas Case or CDC eligibility frameworks the study represented it was applying." Doc. 33 at 3.

As an initial matter, the documentation that Sigmon submitted with the amended complaint—which the court properly can consider on this motion to dismiss[2]—shows that he ultimately was determined to be *not* eligible for the study. The documentation that Sigmon submitted shows that on February 1, 2024, he was notified the he was approved to move on to the baseline phase of the study, that he should assume he was eligible for the study unless told otherwise, and that the baseline surveys contained potentially exclusionary questions that could result in exclusion; Sigmon then was notified that he was excluded as ineligible for the study

---

[2] *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls.").

based on his responses to a baseline survey. Doc. 33-10 at 2; Doc. 33-11 at 2. Thus, the documentation Sigmon submitted does not show that he was found finally eligible and then excluded from the study, it shows instead that he was found ineligible for the study based on his baseline survey answers.

Moreover, the amended complaint alleges—and Sigmon's documentation shows—that the eligibility criteria for the UAB study included a requirement that participants meet both the Kansas GWI Case Definition and the CDC GWI Case Definition. Doc. 33 at 2–3; Doc. 33-4 at 7. And the initial complaint alleged that the original Kansas Case Definition of GWI used by UAB "excluded participants with psychiatric conditions such as PTSD." Doc. 1 at 4; *see also* Linda L. Chao, *Examining the Current Health of Gulf War Veterans With the Veterans Affairs Frailty Index*, Frontiers in Neuroscience, Vol. 17:1245811, 3 (Sep. 7, 2023) https://www.frontiersin.org/journals/neuroscience/articles/10.3389/fnins.2023.1245811/full (last visited 11/16/2026) ("The Kansas GWI case criteria excludes veterans who have psychiatric conditions that may interfere with the accurate reporting of symptoms and/or medical conditions that might predict similar symptoms as GWI.").

Consistent with the documentation that Sigmon submitted, the amended complaint alleges that Sigmon received a high score on a PTSD screening in those baseline testing surveys. Doc. 33 at 2, 5. The amended complaint also alleges that

Sigmon has been diagnosed with PTSD. Doc. 33 at 1. The amended complaint alleges further that Sigmon was "excluded" from the UAB study "based on a PTSD-related screening score." Doc. 33 at 2.

Accordingly, based on the fact allegations in the amended complaint, UAB determined that Sigmon was not eligible for the study on account of his PTSD, and Sigmon did not meet the eligibility criteria of the Kansas Case Definition used by UAB on account of his PTSD. Therefore, Sigmon did not "meet[] the essential eligibility requirements" for the study and was not a qualified individual. 42 U.S.C. § 12131(2). On Count 1, because Sigmon was not a qualified individual, his exclusion from the study cannot amount to discrimination under the ADA or the Rehab Act. *See Lewis*, 166 F.4th at 114.

The amended complaint alleges in Count 2 that UAB violated the ADA and the Rehab Act by failing to provide a reasonable modification. Doc. 33 at 13–14. But Title II of the ADA "does not require [covered entities] to compromise their essential eligibility criteria for public programs," requiring "only 'reasonable modifications' that would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for the service." *Tennessee v. Lane*, 541 U.S. 509, 532 (2004) (citing 42 U.S.C. § 12131(2)). As discussed above, Sigmon was determined to be ineligible for UAB's study because of his PTSD, and did not meet UAB's study eligibility criteria.

So, a judicial ruling that ultimately would reverse or fault UAB's determination that Sigmon was ineligible for the study because of his PTSD, or change the study criteria to allow Sigmon to participate in the study despite his PTSD (particularly where Sigmon previously has alleged that the Kansas GWI Case Definition used by UAB excluded participants with PTSD), would require UAB to change the study itself, which would fundamentally alter the nature of the study. *See id.*

In this regard, the amended complaint alleges that UAB violated Sigmon's statutory rights by not providing "individualized clinical assessment, physician consultation, or investigator-level review, and, upon information and belief, did not determine that such measures would fundamentally alter the nature of the study." Doc. 33 at 14; *see* Doc. 33 at 6. Sigmon's alleged claim challenges the use of the results of the PTSD screening survey, "without individualized clinical review," to determine that his PTSD rendered him ineligible for the UAB study, and points to his approval for participation in other GWI trials based on findings for those studies that he met the Kansas Case Definition for GWI. Doc. 33 at 2; *see* Doc. 33 at 9; Doc. 36. But neither Sigmon nor this court has identified any legal support under the ADA, the Rehab Act, or otherwise for requiring a clinical trial study to determine eligibility based on an individualized clinical review rather than an eligibility survey. Indeed, the amended complaint alleges, and Sigmon does not contest, that he has PTSD, and that he was found ineligible for the UAB study based on his PTSD,

according to the study's baseline eligibility criteria. *See* Doc. 33; Doc. 36. Rather, the amended complaint alleges that, notwithstanding his PTSD, Sigmon should have been further considered for eligibility for the UAB study based on an individualized clinical review. Again, for a federal court to so order in this case—and/or to ultimately hold UAB liable—would "fundamentally alter the nature" of the UAB study, its eligibility criteria, and its eligibility determination. *See Lane*, 541 U.S. at 532.

At bottom, the amended complaint seeks to second-guess and override the eligibility determination, criteria, and review for UAB's GWI study, as well as UAB's means of assessing that eligibility criteria. The amended complaint alleges that the eligibility determination, criteria, and review for UAB's GWI study were discriminatory because UAB excluded Sigmon from participating based on his PTSD. But the alleged facts that Sigmon was found eligible for other GWI studies based on the screening criteria for those studies cannot state a plausible claim that he was eligible for UAB's GWI study, or was entitled to further, individualized review for that particular study. There appears to be no legal basis for any such claim, arising from exclusion from a medical study based on a disability related to the condition that actually is the subject of the study. Illustratively (as noted above), the amended complaint alleges that Sigmon's PTSD symptoms "overlapped with symptom domains recognized under the Kansas Case Definition for GWI." Doc. 33

at 5. Given that alleged overlap, the only reasonable inference is that the medical nature of the relevant GWI study is so intertwined with Sigmon's PTSD symptoms that changing the eligibility determination, criteria, review, or requirements to accommodate Sigmon's PTSD necessarily would fundamentally alter the study. *See Lane*, 541 U.S. at 532.

Thus, the fact allegations in the amended complaint, taken as true, and all reasonable inferences therefrom cannot establish that Sigmon was a qualified individual under the ADA and the Rehab Act, as those allegations do not show that he met the essential eligibility requirements of the study or could have met them with reasonable modifications. *Lewis*, 166 F.4th at 114; 42 U.S.C. § 12131(2); *Lane*, 541 U.S. at 532. Consequently, the amended complaint fails as a matter of law to state a plausible claim for relief. *See* Fed. R. Civ. P. 12(b)(6).

* * *

Generally speaking, where "a more carefully drafted complaint" may state a plausible claim, a plaintiff should be given a chance to amend before dismissal. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (quoting *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991)). Moreover, a *pro se* plaintiff typically should be given "at least one chance to amend the complaint before the district court dismisses the action." *Silberman*, 927 F.3d at 1132. But a court need not provide an opportunity to amend where the plaintiff has not cured deficiencies in the fact

allegations through prior amendment, or where further amendment would be futile. *Bryant*, 252 F.3d at 1163.

In this case, the court granted Sigmon leave to amend, but the amended complaint still does not state a plausible claim for relief. And more careful drafting could not bolster the deficiencies in the fact allegations to the extent that any further amendment could state a plausible claim for relief.

## CONCLUSION

For the reasons stated above, UAB's motion to dismiss (Doc. 34) is **GRANTED**, and this case is **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted. Separately, the court will enter final judgment.

The Clerk is **DIRECTED** to mail a copy of this order and the final judgment to Plaintiff Sigmon at his address of record.

**DONE** and **ORDERED** this November 16, 2026.

**NICHOLAS A. DANELLA**
UNITED STATES MAGISTRATE JUDGE